IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIA LEAL,

    Plaintiff,                                 No. 2:12-cv-1129 CKD

    vs.

CAROLYN W. COLVIN,                        ORDER
Acting Commissioner of Social Security,

    Defendant.

_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. In her motion for remand, plaintiff principally contends that the Administrative Law Judge ("ALJ") erred in his assessment and evaluation of the record. For the reasons discussed below, the court will grant plaintiff's motion for remand, deny the Commissioner's cross-motion for summary judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g).

/////

/////

/////

1

BACKGROUND

Plaintiff, born on February 27, 1953, applied for DIB on February 13, 2009 and for SSI benefits on February 27, 2009, alleging disability beginning on June 30, 2008.[1] Administrative Transcript ("AT") 23.  Plaintiff alleged she was unable to work due to stress, depression, and anxiety.  AT 190.  In a decision dated January 26, 2011, the ALJ determined that plaintiff was not disabled.[2]  AT 23-35.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

/////

---

[1] Under the Act, payment of SSI benefits is precluded for any months prior to the month the application was filed, regardless of the alleged onset date of disability.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

> 2. The claimant has not engaged in substantial gainful activity since June 30, 2008, the alleged onset date.
>
> 3. The claimant has the following severe impairments: a medically severe combination of generalized anxiety disorder, depression not otherwise specified, osteoarthritis, degenerative joint disease of the left knee, and bilateral heel spurs.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in [the regulations] except the claimant is limited to simple, repetitive tasks. The claimant can stand and walk for six hours during an eight-hour workday and can sit for two hours during an eight-hour workday. The claimant can lift and carry twenty pounds occasionally and ten pounds frequently.
>
> 6. The claimant is capable of performing past relevant work as a sorter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2008, through the date of this decision.

AT 23-35.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of her treating physician, Dr. Adeyemo, (2) the ALJ erred in determining plaintiff's residual functional capacity ("RFC"), and (3) the ALJ improperly discredited plaintiff.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

1  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).
2  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.
3  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence
4  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d
5  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The
6  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and
7  resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations
8  omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more
9  than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).
10  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir.
11  1986), and both the evidence that supports and the evidence that detracts from the ALJ's
12  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may
13  not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.;
14  see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports
15  the administrative findings, or if there is conflicting evidence supporting a finding of either
16  disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d
17  1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was
18  applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).
19  ANALYSIS

20         Each of plaintiff's claims take issue with the ALJ's finding that plaintiff was not
21  compliant with her medication regimen and that plaintiff's symptoms improved when her
22  medication was taken as prescribed.  Plaintiff claims that the ALJ erred in finding that plaintiff's
23  "allegations are not fully credible[,]" which he supported by stating that "some of her alleged
24  symptoms can be attributed to her own noncompliance with medical treatment."  AT 32.
25  Plaintiff also claims that the ALJ erred in finding that Dr. Adeyemo's opinion warrants only
26  reduced probative weight.  AT 34.  The ALJ reasoned that Dr. Adeyemo's opinion "is

inconsistent with the treatment record, which shows that the claimant experiences improvement in her symptoms when she takes her medications as prescribed." Id. AT 32. In rejecting Dr. Adeyemo's opinion, the ALJ also stated that it "is based largely on the claimant's subjective complaints," which, as noted above, the ALJ found to lack credibility. AT 34. Finally, plaintiff claims that the ALJ erred in determining plaintiff's RFC, which is based on the ALJ's consideration of the entire record, including Dr. Adeyemo's opinion and plaintiff's credibility. AT 28. In making this finding, the ALJ also assigned all of plaintiff's GAF[3] scores within the range of 40-50 reduced probative weight. AT 31. The ALJ stated that these scores are "inconsistent with plaintiff's reports of improvement of her symptoms with medication" and that "it is impossible to tell to what extent the plaintiff's own noncompliance with medical treatment affected her GAF scores." Id. Thus, the ALJ's findings that plaintiff was not compliant with her medication regimen and that her medication improved her symptoms served as a primary basis for his opinion.

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Substantial evidence of a claimant's failure to comply with a medication regimen may establish a "specific and legitimate" reason to reject the contradicted opinion[4] of a treating professional where that opinion did not address the issue. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Koepke v. Commissioner of Social

---

[3] GAF stands for Global Assessment of Functioning, which is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A 41-50 rating indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, work, or school functioning (e.g., no friends, unable to keep a job). A 51-60 rating indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

[4] Aspects of Dr. Adeyemo's opinion were contradicted by the opinions of examining and non-examining clinicians in the record. AT 31, 33-34.

Sec. Admin., 490 Fed.Appx. 864 (9th Cir. 2012).  Also, the failure to comply with a prescribed medication regimen is a valid reason for discrediting a plaintiff's claim that she suffers from disabling psychiatric symptoms.  See Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991) (en banc); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Koepke, 490 Fed.Appx. 864; see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Still, however, the ALJ must consider the whole record.  Howard, 782 F.2d at 1487.  Also, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds."  Gamble v. Chater, 68 F.3d 319, 321 (9th Cir.1995).

        The ALJ's finding that plaintiff was not compliant with her medication regimen is supported by the record.  Plaintiff's medical records show that she was consistently prescribed Prozac, Remeron, and Klonopin, as well as other medications.  AT 252, 426.  On February 12, 2009, Dr. Adeyemo noted that plaintiff failed to fill her Prozac prescription.  AT 369.  On November, 13, 2009, Dr. Adeyemo noted that "it became obvious she is not taking her medicines as prescribed" and that she did "not appear to be compliant with her med[ication]s."  AT 362, 367.  On April 7, 2010, plaintiff reported to primary clinician Ramil Doronia that "she stopped taking her medication for at least 1 month when her medical coverage was stopped, but resumed taking her medication after it was reinstated."  AT 422.  On July 8, 2010, plaintiff reported to primary clinician Debra Grinstead that "she has been off her Klonopin since May" due to "problems with the refills at the pharmacy and . . . difficulties with MediCal," which were straightened out at the time of this doctor visit.  AT 420.  On July 20, 2010, plaintiff met with primary clinician Anne Dolan, who completed an adult and older adult assessment which noted that "[p]er reports in chart, [plaintiff] does not appear to be compliant with med[ication]s."  AT 417.  On September 23, 2010, a client treatment plan was completed directing Dr. Adeyemo to help plaintiff "learn how to take prescribed psychiatric medications."  AT 402.

        The record also supports the ALJ's determination that plaintiff's medications had improved her symptoms at times.  Plaintiff's medical records show that plaintiff frequently

informed Dr. Adeyemo and other clinicians that her medications were improving her condition and symptoms. It was noted on January 15, 2008, that Lorazepam resolves symptoms of plaintiff's anxiety. AT 312. On June 8, 2009, plaintiff reported to Dr. Patrick Wong that she felt Prozac and Klonopin helped her anxiety. AT 252. On June 12, 2009, Dr. Adeyemo noted that plaintiff "feels like med[ication]s are helping her" and that she "has been taking [an increased] dose of Klonopin which helps her anxiety more." AT 368. On April 7, 2010, primary clinician Ramil Doronio stated that plaintiff was "stable with current medication regimen." AT 422. On July 8, 2010, plaintiff complained "of having anxiety and sleeping problems without the Klonopin." AT 420.

However, the ALJ failed to fully consider the evidence, documented in the medical record, of plaintiff's inability to afford her medications. As discussed above, the majority of the instances in the record concerning plaintiff's failure to comply with her medication regimen are accompanied by indications that plaintiff could not afford her prescriptions. Plaintiff's noncompliance noted on April 7, 2010 was caused by a lack of medical coverage. AT 422. The noncompliance noted on July 8, 2010 was caused by "difficulties with MediCal." AT 420. On July 20, 2010, the noted noncompliance was based only on "reports in chart[,]" which may have referenced the April 7 and July 8 notes. AT 417.

There is also evidence in the record that plaintiff's medications do not adequately improve her symptoms. The January 15, 2008 report noting that Lorazepam helps resolve plaintiff's anxiety also noted that plaintiff had 5-7 episodes in the last month and there was no indication that plaintiff was not compliant with her medication regimen at the time. AT 312. The examination given by Dr. Wong on June 8, 2009, stated that plaintiff felt like her medication was helpful, but also that her ability to carry out simple and complex instructions most of the time would be moderately disrupted about 30% of the time by the disorganizing effect of her anxiety. AT 252, 254. Similarly, plaintiff's June 12, 2009 report that her medications were helping is accompanied by Dr. Adeyemo's note that plaintiff "continues to have somatic

complaints which are increased with anxiety." AT 368.  Also, plaintiff's statement on July 8, 2010 that she has sleeping problems without the Klonopin does not fully support a finding that her medications adequately improve her symptoms since she also testified that she is not able to work while taking her medications because they make her very sleepy.  AT 66, 67, 420.

The ALJ cannot isolate evidence supporting his decision without weighing evidence that detracts from it.  See Jones, 760 F.2d at 995; see also Hammock, 879 F.2d at 501. The ALJ failed to address multiple instances in the record that would contradict or, at least, diminish the relevance of his findings that plaintiff was not compliant with her medication regimen and that her medication improved her symptoms.  Most notably, the ALJ failed to address how plaintiff's noncompliance was related to her inability to obtain her medication due to financial or insurance issues.  This error undermines the ALJ's findings on credibility and residual functional capacity as well as the weight accorded Dr. Ayeyemo's opinion.  The matter will therefore be remanded so that the issue of plaintiff's compliance with her medication regimen, and the efficacy thereof, may be fully addressed by the ALJ.

CONCLUSION

For the reasons stated herein, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and for further findings addressing the deficiencies noted above.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for remand (ECF No. 21) is granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 25) is denied;

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

3. This matter is remanded for further proceedings in accordance with this order; and

4. Judgment is entered for plaintiff.

Dated: April 19, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

33 leal1129.ss